This proceeding was instituted in the Unemployment Compensation Commission for the purpose of determining the liability of the corporate respondent for contributions on wages paid by Pate to his employees down to March 13, 1945, and to determine a similar liability of Pate for contributions on wages paid his employees subsequent to that date. The liability of L. Harvey Son Company, if any, arose under Section 96-8 (e) of the Unemployment Compensation Act of 1943, which was partly repealed by amendment effective March 13, 1945, which struck out the sentence currently imposing the tax.[1] The proceeding relates to contributions on taxes alleged to have accrued prior to that date. It is sought to hold respondent Alton Pate as a "covered unit" liable for contributions subsequent to the effective date of the repeal. Referring to the cited statute it will appear that the liability or non-liability of the Harvey company depends upon a proper determination of the contractual relation existing between the Company and Pate during the period covered by the then existing law, and the effect of its repeal. The status of Alton Pate subsequent to the repeal is a matter for further consideration.[2]
The inquiry went through its several procedural stages, including hearings before a Deputy Commissioner, the Chairman of the Commission and the Full Commission, until it reached Lenoir Superior Court on appeal from the Full Commission and the final determinations and orders of that Body with respect to the liability of each respondent. *Page 293 
The procedure is unassailed and its history is not essential to an understanding of the case.[3]
The hearing before the Full Commission resulted in a determination that the respondents, respectively, were liable for the contributions as demanded, and an order was made that they report and pay them as required by law.
The review in the Superior Court involved the consideration of evidence before the Full Commission at the final hearing and respondents' exceptions taken on the hearing. The exceptions were to the findings of fact by the Commission as not being supported by evidence, and to the conclusions of law and determinations and orders predicated thereon, as erroneously made.
The evidence, as certified by the Commission on respondents' appeal, is summarized in its bearing on these exceptions:
The respondent L. Harvey Son Company operated a department store in which they carried in stock and sold merchandise of a general character, including shoes. They had in all some 8 or 10 departments of classified merchandise. In September, 1942, the Company sold the stock of shoes on hand to a New York concern and contemplated discontinuing the business. However, it entered into a parol agreement with respondent Alton Pate, who had been theretofore engaged in selling shoes, by which he was to occupy a space in the store about 10 feet wide and 100 feet long, exclusively devoted to the sale of shoes. There is evidence from the respondent that this space was rented to Pate for his own use at a rental of 10 percent of his gross sales. The Company furnished janitor service, heat and lights. In the early days of his occupancy and dealing the stock of goods was bought from the wholesalers in the name and upon the credit of L. Harvey Son Company. The manager of the Company explained that this was for the reason that wholesalers did not care to take on new accounts and it was in order that Pate might get his quota. The manager of the Company further testified that this was continued for a few months, after which purchases were made by Pate in his own name. Pate testified:
 "I am operating in my name as far as buying is concerned; everything is bought in my name with the exception of this — I'll say two or three. I have my own books, order books. Sometimes I send them in my name, sometimes in his, but it never goes to the office; I pay the bills myself. I am operating under by name. L. Harvey Son does not have anything to do with the way I operate it."
All the sales tickets are in L. Harvey Son's name. The tickets go up to the bookkeeping department of L. Harvey Son Company, *Page 294 
through the distributor system, where the record is kept. The cash also goes up to the Harvey Company office, and if there is any change due it is sent back down.
The shoe business carried on by Pate is advertised in the papers in the name of L. Harvey Son Company and Pate pays to the Harvey Company part of the advertising. L. Harvey Son Company purchases the credit accounts of goods purchased from Pate without recourse on him. However, when a purchase is made on account a slip is sent up to L. Harvey Son's office with a notation and if it is not approved the sale is not made. Respondents testify that this is to secure to the Harvey Company the collectibility of the accounts they buy. The Company buys no other accounts and Pate sells accounts to no other person. About 90 percent of Mr. Pate's business, as testified to by the investigating deputy, is accounts. Whatever interest or carrying charges due upon them go to L. Harvey Son Company.
Respecting the manner of conducting the business the respondent Pate testified that "as far as the general public is concerned they are dealing with L. Harvey Son." The tickets and the wrapping paper used in Harvey's business had upon them the name of L. Harvey Son Company, and not Pate's.
Respondents testify that L. Harvey Son Company has nothing to do with the operation of Pate's shoe business. Pate hired his help and dismissed employees at his own will. The employees in the sale of shoes did not help in any other department. Pate alone was concerned with the payroll. C. F. Saville, manager of the Harvey store, testified, "Pate keeps his own records and operates in his own name and L. Harvey Son Company has nothing to do with the manner in which he operates his business."
The findings of fact closely parallel and embody the evidence as above summarized, and as noted in the opinion. Exceptions were filed to six of the eight findings, and in two instances were, in part, sustained — (a) by the Commission upon certification of the appeal, and (b) by the Superior Court.
From finding of fact No. 8, with the parts stricken out enclosed in brackets, is as follows:
 "8. It is further found that (Alton Pate, who operated the shoe department, and contracted with the said L. Harvey Son Company, is in employment which is a part of the usual trade, occupation, profession or business of the said company); that the said L. Harvey Son Company is an employing unit within the contemplation of the Unemployment Compensation Law, and also an employer within the terms of such law. It is further found that the said Alton Pate is a subcontractor of the said L. Harvey Son Company for employment which is a part of the Company's business." *Page 295 
From finding No. 3, the following was stricken out:
 "That the money which was taken in by the said Alton Pate and which goes to the cashier's office of the company, is deposited in the company's bank account as any and all money which the Company itself takes in for sale of merchandise."
The conclusion upon the findings follows:
 "That the Company is responsible for the payment of contributions on the wages paid by Alton Pate to his employees, from the date that the company entered into its contract with Alton Pate, to March 13, 1945, the date that the section of the law was repealed; that subsequent to March 13, 1945, the said Alton Pate continued his contractual relationship with L. Harvey Son Company and because of this contractual relationship the said Alton Pate, subsequent to March 13, 1945, is an employer within the contemplation of Section 96-8 (f) (8) of the Unemployment Compensation Law as amended."
With the exceptions noted the trial judge affirmed the findings of fact and conclusions of law made by the Full Commission and affirmed its determinations, orders and decrees.
The respondents appealed, assigning errors.
[1] "Sec. 96-8 (e) — Employing unit: (Whenever any employing unit contracts with or has under it any contractor or sub-contractor for any employment which is a part of its usual trade, occupation, profession, or business, unless the employing unit as well as each such contractor or sub-contractor is an employer by reason of sub-section (f) of this Section, or, paragraph Section 96-11 (c), the employing unit shall, for all of the purposes of this Chapter, be deemed to employ each individual in the employ of each such contractor or sub-contractor for each day during which such individual is engaged in performing such employment) . . ." The bracketed portion was stricken out by Chapter 531 of the Session Laws of 1945.
[2] Section 96-8 (f) (8) in a further definition of "employer" applies a tax also to the contractor or sub-contractor who operates under conditions similar to those above quoted. Repeal became effective March 18, 1947. Session Laws, 1947, HB 127.
[3] Section 96-4, et seq.
Upon appeal from the Unemployment Compensation Commission the Superior Court is bound by the findings of fact made by the Commission where there is evidence to support it, and the same rule, of course, applies here.[4] Where there is such supporting evidence our office is to determine whether the conclusions of law and subsequent orders of the Commission may be properly based or predicated upon the facts found.
The pertinent sections of the Compensation Act in force during the period for which the respondent Harvey Son Company has been held liable for contributions on wages paid by Pate to his employees have been quotedante. The respondent Harvey Son Company contends that the statute is inapplicable to it for that the facts in evidence only go so far as to show Pate to be a tenant of the Harvey Son Company and not a contractor in carrying on or aiding any branch of the Harvey *Page 296 
business. The proponents of the tax liability contend that the existing contract between the parties during the period of alleged liability and their course of dealing between themselves under it, give rise to legitimate inferences of a more intimate business association between them than ordinarily attaches to a rental contract, and point to various customary transactions and dealings between the parties as indicia of a contract within the meaning of the statute, rendering the Harvey Company liable for the tax. The status of Pate as an employing unit subsequent to the repeal of the statute will be further considered.[5]
Perhaps no one incident of the contract and dealings between the parties, however unusual between landlord and tenant, might be of sufficient significance to definitely establish the contention that the purpose and effect of the contract was to carry on any business in behalf of the Harvey Company or in connection with the merchandising activities of the latter, such as to be essentially a part thereof and within the coverage of the statute. But taken as a whole and in combination, they are impressive; and seemingly at variance with the explanations and reasons assigned for them in respondents' testimony, or at least engendering contrary inferences.
The relation contended for by respondents is strongly challenged by amodus vivendi which would lead the public to believe that they were dealing with the Harvey Son Company rather than Pate; which advertises the shoe business as still being carried on by L. Harvey Son Company, not only in the newspapers, but even upon the wrapping paper and sales tickets used every day; which required Pate's money and credits to be turned over to Harvey Son Company immediately as received; puts Harvey in position to control the extension of credit to each customer; requires all credits to belong to Harvey on the principle of immediate purchase; includes the payment by L. Harvey Son Company of sales tax on merchandise it claims was sold by Pate independently; and many other circumstances in evidence so at variance with the simple relation of landlord and tenant as to greatly over-burden that conception. On the other hand, these practices could hardly be satisfactorily explained on any theory other than that the business was really that of the Harvey Son Company and that the limitations and restrictions imposed upon Pate were such as to classify him as a contractor within the meaning of the statute.
Court decisions under statutes which make the tax liability to depend upon the relation of master and servant, as we know it at common law, and which, therefore, make control of the person employed a criterion of the liability to be imputed to the alleged employer, may be found to put more emphasis on the indicia of such control than may be warranted in the present case. *Page 297 
The statute under review is frankly predicated upon conditions arising out of contract, which in substance make the business carried on virtually that of the superior party to the contract. Since the statute openly deals with the subject of contract its application might be expected to pretermit some of the factors supposed to be insignia of the relation of master and servant as distinguished from that of independent contractor. There is, in this jurisdiction at least, no question that in fixing the coverage of the Unemployment Compensation Act the Legislature may go much farther in imposing the contributions than the supposed limitations of master and servant, or employer and employee, as those terms are generally defined and dealt with in the common law; and may, if essential to the imposition of the tax, argument the meaning of the term "employer" beyond the popular definition. In Unemployment Compensation Commission v. Insurance Co.,219 N.C. 576, 14 S.E.2d 689, the Court said:
 "The fact that the state has engaged in a cooperative scheme with the Federal Government does not necessarily imply strict uniformity in the incidence of the tax levied by the State and the Federal laws."[6]
and
 "We think it is evident that the Legislature, for the purpose of levying a tax may determine what shall constitute employment subject to taxation without regard to existing definitions or categories . . . it may do this by direct definition, or, perhaps with greater exactness, by providing a reasonable administrational procedure by which such employment may be defined or ascertained."[7]
There are many decisions supporting this view.[8]
The circumstances summarized, supra, from the evidence as incidents of the contract and their mutual dealings, are not directed to showing these relations and making available their common law implications, but to the issue whether the contract was of the nature described in the statute. The judicial determination of that question must depend upon inferences fairly drawn from the evidence by those whose office it is to find the facts. We cannot say that the findings of the Commission are unsupported by evidence, or that they are inadequate to sustain the conclusions drawn from them. *Page 298 
The evidence tends to show that the whole business conducted by Pate was absorbed by L. Harvey Son Company as fast as production occurred, under conditions which secured to that Company exclusive control of both cash and credit, and paid the Company a revenue based on its gross, rising and falling with its volume, without reasonable relation to the rental value of the space occupied by Pate in the store. Under these circumstances the outward forms or devices by which the result was accomplished are relatively immaterial to the purpose of the law. Apparently, the contract makes Pate an entrepreneur deriving his compensation from the difference which prudent management may effect between cost of production and a fixed 10 percent gross on the Company's business.
This contract between L. Harvey Son Company and Pate continued in force after the amendment of the law concededly releasing L. Harvey Son Company from further contribution with respect to wages paid Pate's employees. Because of the continued existence of this contract the Commission contends that Pate was himself a "covered unit" and liable for contributions under Section 96-8 (f) (8) of the Act.[9] It is conceded that by amendment to the Act, effective March 18, 1947, Pate is released from further contributions under this subsection. The demand upon him is for contributions with respect to employment subsequent to March 13, 1945, while the law was in force. We are of the opinion the contributions were currently required by the statute as it then stood.
The "contribution" imposed by the law is a tax.[10] While under our decisions accrued taxes are not in all respects regarded as a debt, although sometimes treated similarly in remedial procedure,[11] we have no doubt that the State has a vested interest in accrued taxes which is not destroyed by simple repeal of the statute currently imposing them, without any accompanying provision in the nature of expressed or implied release and where the procedure for their collection is not involved in the repeal.
The Unemployment Compensation Act presents a general scheme to secure current contributions from employers in furtherance of the purposes of the Act, provides for the determination thereof with right of appeal, and procedure for the enforcement of the law and the collection of the contributions, and all of the machinery for that purpose is left intact. We are of the opinion that it was not the purpose of the Legislature in amending the law to make it retroactive in the sense that it released any employer from the obligation of reporting and paying *Page 299 
contributions which had accrued in this connection. We conceive the law in this State to be as stated in Cooley on Taxation:
 "The rule favoring a prospective construction of statutes is applicable to statutes which repeal tax laws. Accordingly it is held that where such a statute is not made retroactive a tax assessed before the repeal is collectible afterwards; and where taxes are levied under a law which is repealed by a subsequent act, unless it appears clearly that the legislature intended the repeal to work retrospectively, it will be assumed that it intended the taxes to be collected according to the law in force when they were levied."[12]
We, therefore, conclude that the judgment of the trial court in affirming the determinations, orders, and decrees of the Unemployment Compensation Commission is free from error, and it is
Affirmed.
[4] Sec. 96-4 (m)
[5] Sec. 96-8 (f) (8) ante.
[6] Loc. cit. p. 586.
[7] Loc. cit. p. 587.
[8]U. C. C. v. City Ice, etc., Co., 216 N.C. 6, 3 S.E.2d 290;U. C. C. v. National Life Ins. Co., 219 N.C. 576, 14 S.E.2d 689; 139 A.L.R., 895; U. C. C. v. Jefferson Standard Life Ins. Co., 215 N.C. 479,2 S.E.2d 584; See cases cited U. C. C. v. Ins. Co., supra, p. 587; c/p citations in respondents' brief: annotation 147 A.L.R., 828; annotation 152 A.L.R., 525; McGruder v. Yellow Cab Co. (C.C.A. 4th),141 F.2d 324, 152 A.L.R., 516.
[9] See Citation, note 2, ante.
[10] Prudential Ins. Co. of America v. Powell, 217 N.C. 495,8 S.E.2d 619.
[11] Gatling v. Carteret County, 92 N.C. 536, 53 A.L.R., 432;State v. Georgia Co., 112 N.C. 34, 17 S.E. 10, 19 L.R.A., 485.
[12] Cooley on Taxation, 4th Ed., Vol. 2, sec. 538; Higgins Estatev. Hubbs, 242 P. 515: In re Moseley' Estate, 164 P. 1073; In reMeinerts Estate, 213 N.W. 983; McDonald v. State Tax Commission,158 Miss. 331, 130 S., 473; Moore v. Commonwealth (Va.), 155 S.E. 635;Trippett v. State, 149 Cal. 521, 86 P. 1084; Commonwealth v. MortgageTrust Co. of Penna., 227 Pa., 153, 76 A. 5; Riley, State Comptroller v.Howard, et al. (Cal.), 226 P. 993.