STATE OF NORTH CAROLINA ON RELATIONSHIP OF THE EMPLOYMENT
SECURITY COMMISSION OF NORTH CAROLINA v. R. H. JARRELL,
CLAIMANT, EMPLOYEE, ET ALS., AND PEE DEE MANUFACTURING COM-
PANY.

(Filed 3 February, 1950.)

**1. Master and Servant § 62—**

The findings of fact of the Employment Security Commission are con-
clusive when supported by evidence, and therefore review is limited to
determining whether there was evidence before the Commission to support
its findings and whether the facts found sustain its conclusions of law.

**2. Master and Servant § 61—**

Where the employer resists recovery of unemployment compensation on
the ground that claimants' unemployment was due to a work stoppage
resulting from a labor dispute, each claimant is required to show to the
satisfaction of the Commission that he is not disqualified for benefits under
G.S. 96-14 (d).

**3. Master and Servant §§ 60, 61—After strike, notice of suspension of
operations and that employees might seek other employment, held not
discharge.**

A finding that, after a strike which closed the plant and after the em-
ployer's attempt to resume operations had proved futile, the employer
posted a notice stating that all operations at the mill would cease for an
indefinite period and that employees were free to seek employment else-
where, *is held* insufficient to support a conclusion of law by the Commis-
sion that subsequent to the posting of the notice the unemployment of
claimants was not due to stoppage of work because of a labor dispute,
G.S. 96-14 (d), since the notice merely signified the willingness of the
employer to terminate its employment relationship with any worker who
elected to withdraw from the existing labor dispute and seek work else-
where, but did not alter the status of any employee who refrained from
exercising this option.

APPEAL by Pee Dee Manufacturing Company from *Bobbitt, J.,* at
March Term, 1949, of RICHMOND.

This proceeding is based upon claims filed under the Employment
Security Law, *i.e.,* Chapter 96 of the General Statutes as amended, by
55 workers for unemployment benefits for varying periods beginning
31 July, 5 August, 7 August, and 7 September, 1947, caused by a stoppage
of work which occurred at a cotton mill at Rockingham, North Carolina,
owned by the Pee Dee Manufacturing Company, and known as Pee Dee
Mill No. 2. The Pee Dee Manufacturing Company, which is hereafter
called the Company, actively opposed the claims. It asserted that the
claimants were disqualified by G.S. 96-14 (d) for the benefits sought by
them on the ground that their unemployment during the periods covered

by their claims was due to a stoppage of work which existed because of a labor dispute at Pee Dee Mill No. 2.

The testimony relating to the claims was taken before a special claims deputy, who referred the evidence and all questions of fact and law arising thereon to the Employment Security Commission for determination pursuant to the authority vested in him by G.S. 96-15 (b).

All parties conceded the truth of the matters set out in this paragraph. The Company is a corporation, whose capital stock was owned by Clairmont and Golding down to 1 September, 1947. It employed about 230 persons at its Pee Dee Mill No. 2. On 2 June, 1947, the Company and a labor union representing a majority of the employees found themselves unable to agree upon a contract covering work in the plant; and the members of the union thereupon walked out, established picket lines, and thereby induced a total shutdown of the plant for the purpose of coercing acceptance by the Company of terms proposed by the union. On 30 June, 1947, the Company undertook to reopen the plant. It persisted in this effort for a week, and then gave over because a sufficient operating force would not cross the picket lines. On 7 July, 1947, the Company posted this notice on its bulletin board: "Notice to all employees. Pee Dee Mill No. 2 will cease all operations effective as of this date for an indefinite period. All employees are free to seek employment elsewhere." The Company utilized sometime next succeeding the posting of the notice in renovating the machinery in the mill. On 1 September, 1947, Golding sold his capital stock in the Company to Carella and Guorgopoulous, and on 1 October, 1947, Clairmont made a similar transfer to the same parties. On the day last mentioned, Pee Dee Mill No. 2 resumed normal operations.

The Company presented evidence before the special claims deputy tending to show that in June, 1947, its employees were divided into two groups, to wit, a small minority, who desired to work, and a large majority, who were resolved to shut down Pee Dee Mill No. 2 until the Company agreed to a contract embodying the union demands; that the unsuccessful efforts of the Company to resume operations at the plant during the week beginning 30 June, 1947, precipitated much violence between the two groups of employees, and convinced the Company that it was not possible to reopen the mill as long as the majority of the employees were determined to strike and to prevent the minority from working; that in consequence of its determination in this respect the Company posted the notice of 7 July, 1947, on its bulletin board merely to manifest its acceptance of the forced shut down of Pee Dee Mill No. 2 as an accomplished fact, and to apprise all concerned that it did not intend to promote further antagonism between the two groups of its employees by attempting to resume operations at the plant against the

active opposition of the majority group; that the Company did not intend the notice of 7 July, 1947, to put an end to its relations with its employees, and the notice was not construed by either the Union or the employees to have any such purpose or effect; that, on the contrary, the Union remained unwilling "for the mill to run without a contract" after 7 July, 1947, and notified the Company after that date "that people would not be allowed by the Union to go into the mill and work"; that the majority group kept pickets stationed at or near the mill gates at times after 7 July, and on occasions subsequent to that date they prevented mechanics from entering the plant to renovate the machinery; that "the Company was able and ready and willing to run and engage in production at any time after July 7 that it could have got people in to work," but it "never had any communication . . . that the Union was ready and willing to let the people in to work"; that on or about 1 October, 1947, a majority of the employees notified the Company for the first time that they were willing to return to work; that thereupon the Company resumed normal operations at Pee Dee Mill No. 2; and that the strike was then "called off and ended."

When it made its findings of fact on the evidence taken before the special claims deputy, the Employment Security Commission took no account whatever of the testimony presented by the Company and summarized in the preceding paragraph. It made findings of fact, however, conforming with exactitude to the admitted matters set out in the fourth paragraph of this statement. The only finding relating in any way to events occurring at Pee Dee Mill No. 2 after 7 July, 1947, was this: "5. That thereafter the plant remained closed until October 1, 1947, at which time it reopened and resumed operations for all intents and purposes."

On the basis of its findings of fact, the Commission concluded as a matter of law that the notice of 7 July, 1947, totally separated the employees at Pee Dee Mill No. 2 from their employment by the Company and "that the unemployment of employees of the plant subsequent to that date was not caused by a stoppage of work attributable to a labor dispute, but was caused by the total separation of such employees from employment by the employer." The Commission thereupon adjudged that the 55 claimants "are entitled to benefits without disqualification, if otherwise eligible, on and after July 31, August 5, August 7, and September 1, 1947, according to the date of claims filed."

The Company excepted to the judgment of the Commission and appealed to the Superior Court of Richmond County, assigning error in law. When the appeal was heard in the Superior Court, a judgment of affirmance was entered, and the Company appealed to this Court, assigning error in law.

*W. D. Holoman, R. B. Overton, R. B. Billings, and D. G. Ball for the Employment Security Commission of North Carolina, appellee.*

*Pierce & Blakeney for Pee Dee Manufacturing Company, appellant.*

ERVIN, J.   Under the statute providing for judicial review of the decisions of the Employment Security Commission, the findings of fact of the Commission are binding upon the reviewing court if supported by evidence, and the judicial review is limited to determining whether errors of law have been committed by the Commission.   G.S. 96-15 (i) ; *Unemployment Compensation Comm. v. Harvey & Son Co.,* 227 N.C. 291, 42 S.E. 2d 86; *In re Steelman,* 219 N.C. 306, 13 S.E. 2d 544, 135 A.L.R. 929.   For this reason, the function of the reviewing court is ordinarily twofold : (1) To determine whether there was evidence before the Commission to support its findings of fact; and (2) to decide whether the facts found sustain the conclusions of law and the resultant decision of the Commission.   *Unemployment Compensation Comm. v. Harvey & Son Co., supra.*

The appellant has not preserved any exceptions to any of the findings of fact of the Commission.   *Russos v. Bailey,* 228 N.C. 783, 47 S.E. 2d 22; *Smith v. Davis,* 228 N.C. 172, 45 S.E. 2d 51, 174 A.L.R. 643; *Rader v. Coach Co.,* 225 N.C. 537, 35 S.E. 2d 609.   Hence, we are spared the task of determining whether the testimony before the Commission supported the facts found by it.

The appellant's exception raises this question : Do the facts found by the Commission sustain the judgment of the Superior Court?   Since this judgment merely affirmed the decision of the Commission, recourse must be had to that decision and to the legal premise on which it rests for the solution of our problem.

The issue before the Commission was whether the claimants were barred from recovery of the benefits claimed by them by this provision of the statute : "An individual shall be disqualified for benefits . . . for any week with respect to which the Commission finds that his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute at the factory, establishment, or other premises at which he is or was last employed, provided that this subsection shall not apply if it is shown to the satisfaction of the Commission that (1) he is not participating in or financing or directly interested in the labor dispute which caused the stoppage of work; and (2) he does not belong to a grade or class of workers of which, immediately before the commencement of the stoppage, there were members employed at the premises at which the stoppage occurs, any of whom are participating in or financing or directly interested in the dispute."   G.S. 96-14 (d).

Each of the claimants was required to show to the satisfaction of the Commission that he was not disqualified for benefits under the Employment Security Law by this statute. *In re Steelman, supra.* This being so, the decision of the Commission constituted an adjudication that the 55 claimants were not disqualified for benefits under G.S. 96-14 (d). As the claimants did not base their claims on the proviso in the statute, this adjudication was necessarily bottomed upon the conclusion of law that the unemployment of the claimants during the periods covered by their claims was not due to a stoppage of work which existed because of a labor dispute at Pee Dee Mill No. 2. This brings us to the final question as to whether this conclusion of law is sustained by the only finding of fact invoked for that purpose, *i.e.*, the finding that on 7 July, 1947, the Company posted this notice on its bulletin board: "Notice to all employees. Pee Dee Mill No. 2 will cease all operations effective as of this date for an indefinite period. All employees are free to seek employment elsewhere."

The Commission advances a line of reasoning to establish the connection between this finding of fact and the conclusion of law necessarily underlying the decision of the Commission and the judgment of the Superior Court affirming it. It concedes that all unemployment of workers at Pee Dee Mill No. 2 between 2 June, 1947, and the moment of the posting of the notice of 7 July, 1947, was occasioned solely by a strike arising out of the inability of the Company and the Union representing a majority of its employees to agree on a contract covering work in the mill. It asserts, however, that the notice of 7 July, 1947, constituted in law a discharge by the Company of all of its employees, and that by reason thereof any subsequent unemployment of the claimants was occasioned by their discharge and not by a stoppage of work which existed because of a labor dispute at Pee Dee Mill No. 2. The Commission insists that this conclusion is valid regardless of what events may have occurred at the plant subsequent to the posting of the notice and regardless of what parts the claimants may have played in such events.

This reasoning ignores both the plain wording of the notice, and the realities of the situation as depicted by the other findings of the Commission. When the notice was posted, Pee Dee Mill No. 2 was completely closed by a strike which had been in progress for more than a month. Efforts to resume operations had proved futile. There was no prospect that the plant could be reopened by the Company at any time within the foreseeable future. By posting the notice, the Company merely accepted the shut-down of the mill as an accomplished fact, and signified its willingness to terminate its employment relationship with any worker who elected to withdraw from the existing labor dispute and to seek work elsewhere. The notice did not alter the status of any employee who

14—231

refrained from exercising this option. It certainly did not cause the unemployment of those who were already on strike and who continued on strike until the existing labor dispute ended.

None of the findings of fact indicate that any of the claimants elected to withdraw from the labor dispute and to seek work elsewhere.

It follows that the facts found by the Employment Security Commission do not support the conclusion of law and the resultant decision of the Commission, or the judgment of the Superior Court affirming such decision. The judgment of the Superior Court is, therefore,

Reversed.