IN THE MATTER OF: THE PETITION OF CAROLINA TELEPHONE AND
TELEGRAPH COMPANY FOR ADMINISTRATIVE REVIEW OF DECISION OF
COMMISSIONER OF REVENUE CONCERNING AN ASSESSMENT OF ADDITIONAL
FRANCHISE TAXES FOR THE QUARTERS ENDED JUNE 30, 1958, THROUGH
MARCH 31, 1961.
PETITION OF THE COMMISSIONER OF REVENUE FOR THE STATE OF
NORTH CAROLINA FOR JUDICIAL REVIEW OF THE TAX REVIEW BOARD'S AD-
MINISTRATIVE DECISION NUMBER 71.

(Filed 27 March 1968.)

**1. Telephone and Telegraph Companies § 1—**

A telephone or telegraph company is an instrument of commerce, and
its business constitutes commerce.

**2. Taxation § 26—**

Compensation received by the respondent telephone company for the op-
eration of its facilities located wholly within this State under an arrange-
ment with another telephone company to provide a "joint private line ser-
vice" for transmitting communications of its subscribers outside the State,
collection for this service being made by the other telephone company, *is
held* to be revenue received by respondent for the actual transmission
through its territory of communications in interstate commerce and not a
rental of respondent's facilities by the other telephone company, and
therefore such compensation is exempt from the franchise tax imposed by
G.S. 105-120(b). G.S. 105-120(e).

**3. Taxation § 23—**

Tax statutes are to be strictly construed against the State and in favor
of the taxpayer.

APPEAL by Commissioner of Revenue from *Martin, J.,* October
1967 Civil Session of WAKE Superior Court.

Carolina Telephone & Telegraph Company, hereinafter referred
to as the respondent, is a public utility corporation organized and
existing under the laws of North Carolina. All of its physical equip-
ment and lines used in the transmission of intelligence are located
wholly within this State. Some of its lines are inter-connected with
the lines of other telephone companies, some of which are engaged in
business both within and without North Carolina.

The Commissioner of Revenue, hereinafter referred to as peti-
tioner, proposed an assessment of an additional franchise tax against
respondent for the period, 30 June 1958 to 31 March 1961, pursuant
to G.S. 105-120 and 105-241.1.

The original proposed assessment was based upon receipts of re-
spondent which fall into three categories. Two were resolved in fa-
vor of respondent before the proceeding came on for hearing in the
Superior Court.

At the time this proceeding was instituted, W. A. Johnson was

Commissioner of Revenue. By appropriate order, I. L. Clayton, the present Commissioner, has been substituted as a party.

In the Superior Court, the controversy was submitted on written stipulations, the pertinent portions of same being summarized as follows:

(1) This controversy involves the question of whether certain revenues received by respondent derived from transmission of intelligence are subject to franchise taxes by the State of North Carolina under G.S. 105-120(b). For the purposes of this action, "transmission of intelligence" means: ". . . Creating changes of intensity in a continuous current of electricity exactly corresponding to the changes of density in the air caused by the vibrations which accompany vocal or other sounds, and of using that electrical condition thus created for sending and receiving articulate speech." (or other intelligence data). (Quoted from *Telephone Cases*, 126 U.S. 1, 31 L. Ed. 863 at 989 [1887].

(2) For the purpose of this action, this transmission of intelligence is made from one point to another point over channels provided by wires or microwave and includes voice telephone communications, teletypewriter service communications, telephoto communications services, data transmission communications services, television communications services and other signaling devices.

(3) The only matter under consideration in this action is the taxability of respondent's revenue derived from operations known as "joint private line service." For the purposes of this action, "joint private line services" means services rendered to a subscriber by respondent wherein the subscriber has access to "telephone services" for the transmission of intelligence to points outside of the State of North Carolina, *i.e.*, across State lines, and for the rendition of such services by respondent, it is essential that respondent interconnect its facilities with the facilities of other telephone companies in other states. Further, such "telephone services" within the purview of this action, either originate or terminate within North Carolina but none of said services both originate and terminate within North Carolina.

(4) Either the local channel or the interchange channel may be provided by means of wire or microwave. On any one pair of wires or microwave facility, there may be two or more interchange channels carrying the private line transmissions to or from North Carolina to or from other states, at the same time.

(5) In order for the "joint private line service" to operate at all, the respondent not only provides for facilities in its area to be joined with facilities of other telephone companies in other states, but it also provides a continuous servicing of its own facilities. This

servicing includes maintenance of equipment, maintenance of the transmission channels whether wire or microwave, supplying of booster stations or repeaters at frequent intervals, supplying the original continuous current of electricity, and continuous availability to the subscriber for service to correct any defect in the service occurring in the respondent's territory.

(6) All of the collecting from subscribers to this service was made by Southern Bell Telephone & Telegraph Company (hereinafter referred to as Southern Bell) with whom respondent had a working arrangement to provide the service.

(7) All of the revenues attempted to be taxed by petitioner in this action were derived from transmission of intelligence across State lines by the use of "joint private line service" and the services are rendered to the subscriber at a cost provided under tariffs filed with the Federal Communications Commission.

(8) Both petitioner and respondent agree that if the said matters, things and services for which respondent received revenues described above constitute intrastate commerce, and come within the terms of G.S. 105-120, the stipends received by respondent are subject to the tax levied thereunder; and that if the matters, things and services for which respondent received revenues described above constitute interstate commerce, said stipends are not subject to the aforesaid tax.

At the trial in the Superior Court, Judge Martin concluded that the revenue of respondent under consideration was for services rendered in the interstate transmission of intelligence. From judgment entered in favor of respondent, petitioner appealed.

*Thomas Wade Bruton, Attorney General, and Robert L. Gunn, Assistant Attorney General, for petitioner appellant.*

*Taylor, Brinson & Aycock by Herbert H. Taylor, Jr., and Joyner & Howison by W. T. Joyner for respondent appellee.*

BRITT, J. The statutory provisions pertinent to this appeal are as follows:

G.S. 105-120. "Franchise or privilege tax on telephone companies. — (a) Every person, firm, or corporation, domestic or foreign, owning and/or operating a telephone business for the transmission of messages and/or conversations to, from, through, in or across this State, shall, within thirty days after the first day of January, April, July and October of each year, make and deliver to the Commissioner of Revenue a quarterly return,

verified by the affirmation of the officer or authorized agent making such return, showing the total amount of gross receipts of such telephone company for the three months ending the last day of the month immediately preceding such return, and pay, at the time of making such return, the franchise, license or privilege tax herein imposed.

"(b)   An annual franchise or privilege tax of six per cent (6%), payable quarterly, on the gross receipts of such telephone company, is herein imposed for the privilege of engaging in such business within this State. Such gross receipts shall include all rentals, other similar charges, and all tolls received from business which both originates and terminates in the State of North Carolina, whether such business in the course of transmission goes outside of this State or not:   *   *   *

*          *          *

"(e)   Nothing in this section shall be construed to authorize the imposition of any tax upon interstate commerce."

Petitioner contends that the revenue received from Southern Bell for "joint private line service" was for the rental of respondent's facilities, all of which were located in this State, and that said revenue comes within the taxability purview of the foregoing statute.

Respondent contends that its arrangement with Southern Bell was not a rental but a service rendered by respondent. Respondent contends that in the transmission of what was unquestionably interstate intelligence, respondent actually carried (transmitted physically) each message in its course in the respondent's territory; that between the point of origin and the point of exchange in North Carolina with the Bell System, respondent rendered every service necessary to transmit physically the message.

Thus, the question presented by this appeal: Did respondent actually transmit, in and through its territory, the interstate communications involved in this action; or did respondent merely rent its property to Southern Bell for transmission by Southern Bell in respondent's territory?

We hold that respondent actually transmitted the communications through its territory and said service was interstate commerce.

A telephone or telegraph company occupies the same relation to commerce as a carrier of messages that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. *Telegraph Co. v. Texas*, 105 U.S. 460, 26 L. Ed. 1067 (1882).

Although all of respondent's facilities are located in North Carolina, in performing the service involved in this proceeding, said facilities connected with those of another company to transmit intelligence between this State and other states and the intelligence transmitted was interstate from its origin to its termination. *U. S. A. v. Cab Co.*, 332 U.S. 218, 91 L. Ed. 2010, 67 S. Ct. 1560 (1947); *Telegraph Co. v. Texas, supra; Ward v. Tel. Co.*, 300 F. 2d 816, (U. S. Ct. of App., 6th Cir. 1962).

It is stipulated that respondent, in its cooperation with Southern Bell in providing joint private line service, not only provided facilities and equipment in its area but also provided a continuous servicing of its facilities and equipment. The facts clearly show that the relationship between respondent and Southern Bell was not that of lessor and lessee. Tax statutes are to be strictly construed against the State and in favor of the taxpayer. *Watson Industries v. Commr. of Rev.*, 235 N.C. 203, 69 S.E. 2d 505 (1952).

Petitioner relies very heavily on the decision of our Supreme Court in *Tel. Co. v. Clayton*, 266 N.C. 687, 147 S.E. 2d 195 (1966). The facts and principles of law in that case are clearly distinguishable from those of the case at bar.

We have carefully considered each of petitioner's assignments of error but find that neither has merit. Each of them is overruled.

The judgment of the Superior Court is

Affirmed.

MALLARD, C.J., and BROCK, J., concur.