IN THE MATTER OF: STATE OF NORTH CAROLINA ex rel. EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA v. BLUE RIDGE BROADCASTING CORPORATION, TRADING AS RADIO STATION WFGW, AM & RADIO STATION WMIT, FM, POST OFFICE BOX 158, BLACK MOUNTAIN, NORTH CAROLINA 28711, EMPLOYER NO. 96-11-034

No. 7828SC1014

(Filed 4 September 1979)

**Master and Servant § 102.— unemployment security tax—liability of employer— exemption taken away—method of determining liability**

Where an employer, otherwise subject to the provisions of the Employment Security Act, N.C.G.S. Chapter 96, is exempted from those provisions by

Employment Security Comm. v. Broadcasting Corp.

legislative action and by legislative action that exemption is subsequently terminated, and additionally, where there have been no changes in the circumstances or activities of the employer, upon reinstatement of liability under Chapter 96 that employer is entitled to credit for its prior account balance, and that employer's contribution rate should be determined primarily by reference to its former experience rating at the time of its exemption.

APPEAL by petitioner from *Lewis, Judge.* Judgment entered 14 July 1978 in Superior Court, BUNCOMBE County. Heard in the Court of Appeals 21 August 1978.

*Thomas S. Whitaker, V. Henry Gransee, Jr. and Gail C. Arneke, by V. Henry Gransee, Jr., for the Employment Security Commission of North Carolina, petitioner appellant.*

*Grier, Parker, Poe, Thompson, Bernstein, Gage & Preston, by William L. Rikard, Jr., for the respondent appellee.*

MARTIN (Robert M.), Judge.

Respondent Blue Ridge Broadcasting Corporation operates radio stations WFGW-AM and WMIT-FM. In 1967 respondent was notified by petitioner that, because it was a non-profit corporation exempt from federal income taxation under § 501(c)(3) of the Internal Revenue Code, it was exempt from the application of the North Carolina Employment Security Act. At the time respondent received this notice, it had an employer's account with petitioner in the amount of $5,006.19, and was entitled to a cumulative experience rating of .9%. By action of the 1971 General Assembly, respondent's exemption was terminated as of 1 January 1972. Respondent, for reasons unknown, did not receive notification or otherwise become aware of the termination of its exemption until petitioner made an administrative determination of that fact and served a notice of demand and payment upon respondent. At this time, respondent's prior credit balance with petitioner was disregarded and respondent was assigned the highest assignment rate for contributions under the Act, a rate of 2.7%, three times higher than its prior rating of .9%. Respondent, while conceding that it was properly liable for assessments for contributions after 1 January 1972, contended to petitioner that it should have both its prior credit balance and its previous experience rating taken into consideration in determining the rate of contribution to be assessed after the termination of its exemp-

tion. Petitioner disagreed, and on appeal from the ruling of the full Commission to the Superior Court, the Superior Court ruled in favor of respondent and remanded the cause to petitioner for further proceedings consistent with its ruling. Petitioner appealed to this Court, arguing that strict construction of the admittedly complex statutory provisions pertinent to the question before us compels the result reached by the Commission.

The question posed for our resolution is, therefore, whether respondent, solely by reason of its exercising the statutory exemption from the North Carolina Employment Security Act for the period 1 September 1967 through 31 December 1971, ceased to be an employer for the purpose of the Act, requiring petitioner to disregard its prior credit balance and experience rating, even though the business and employing acts of respondent continued without interruption during the period of exemption. We conclude that petitioner is in error, and affirm the ruling of the Superior Court. The answer to this question lies in a careful reading of the applicable statutes.

N.C. Gen. Stats. § 96-8(4) (as in effect prior to 1 January 1972) defined an "employing unit" as any individual or organization (including a broad list of categories) which had *in its employ* one or more individuals performing services for it within this State. N.C. Gen. Stats. § 96-8(5) (as in effect prior to 1 January 1972) defined an "employer" as being any employing unit which, within a current or preceding calendar year and which in each of 20 different weeks within such calendar year (whether or not the weeks were consecutive) had *in employment* four or more individuals. Employment is defined in N.C. Gen. Stats. § 96-8(6) (a through g), where lists of activities are characterized either as being included in (N.C. Gen. Stats. § 96-8(6)(a-f)) or excluded from (N.C. Gen. Stats. § 96-8(6)(g)) the term "employment." All activities included as "employment" require the existence of "the legal relationship of employer and employee" between an employing unit and the individual performing services for that employing unit (N.C. Gen. Stats. § 96-8(6)(a)). N.C. Gen. Stats. §§ 96-9(a)(1) and 96-9(b)(1) provide that contributions are due from employers with respect for wages paid for employment. N.C. Gen. Stats. § 96-8 provides initially that the defined terms in that section are used in that meaning unless the context clearly requires otherwise. Therefore, by reading N.C. Gen. Stats. §§ 96-8(4),

96-8(5), 96-8(6), 96-9(a)(1) and 96-9(b)(1) together, it may be deduced that (for the purposes of the statute prior to 1 January 1972) when an employing unit has four or more individuals in its employ, and the services performed by those individuals constituted employment as defined by the Chapter, the employing unit became an employer and thus becomes subject to the provisions of the Chapter.

N.C. Gen. Stats. § 96-9(c)(5) provides that if an employer subject to Chapter 96 "ceases to be such an employer," his account shall be closed and that account "shall not be used in any future computation of such employer's rate." An employer ceases to be an "employer subject to this Chapter" when that employer "has not had any individuals [four or more prior to 1 January 1972] in employment for a period of two consecutive calendar years," N.C. Gen. Stats. § 96-11(d).

As stated above, the term "employer" by its definition and use in Chapter 96 means an "employing unit" which is subject to the provisions of the Chapter. Yet, N.C. Gen. Stats. §§ 96-9(c)(5) and 96-11(d) both employ the phrase "employer subject to this Chapter" as if there were another type of "employer." To use the defined term "employer" (as contemplated by N.C. Gen. Stats. § 96-8) in the context of these two provisions leads to redundant and ambiguous expressions. Additionally, N.C. Gen. Stats. § 96-11(d), when it uses the term "employment," refers in one place specifically to the statutory definition, but is silent as to whether the other uses of the term are to be made with reference to the definition. Either usage yields an intelligible meaning, but under the circumstances (some specific references to defined terms as defined by statute and some uses of the same terms without such references in the same section) we cannot say which meaning is intended for which particular term in the absence of specific references. Arguably, "context clearly requires" the interpretation of a term in its common sense where, in a given section, some uses of that term specifically refer to the statutory definition and some do not. There is no clear line of demarcation between the use of the defined terms and the use of general terms in the statute.

Petitioner has argued that the difficulty in interpreting this statute derives from its technical nature; we are of the opinion that the difficulty derives from poor draftsmanship and ambigu-

ous interchange of specific and generic terms. Notwithstanding, the position of petitioner, based as it is upon a technical reading of the statute, might be tenable were it not for two principal factors: First, the result reached is inherently inequitable, in that an employer who, without any action on its part, was accorded an exemption from Chapter 96 by the legislature and who utilitized that exemption, is now penalized for having done so, even though its actual status and conditions as an employer have not changed. Unlike a situation where an employer actually ceased doing business and then began anew (a situation where the construction of the statute urged by petitioner would be both reasonable and appropriate), the only change pertinent to the situation before us was in statutory language and definitions. No fact changed about the respondent which would justify forfeiture of its account or the raising of its experience rating to a level three times that which it was before the statutory exemption went into effect.

Second, the language of Chapter 96 itself suggests that the result argued for by petitioner was not intended or contemplated by the Legislature when the Chapter was enacted. N.C. Gen. Stats. § 96-8(6)(g)(8) provides that "no retroactive liability shall be imposed on any employer for any year in which the employer held an exemption from income tax under § 501(a) . . . ." N.C. Gen. Stats. § 96-11(d) apparently contemplates the "reactivation" of the account of this type of exempted employer under certain circumstances. These two provisions are sufficient to make us confident that the Legislature did not intend the punitive effect upon organizations similarly situated which a strict and technical reading of the statute would seem to require. It appears that the instant situation was, by inadvertance, simply not contemplated by the drafters at the time Chapter 96 was enacted.

Contributions imposed upon employers by Chapter 96 are taxes, *Unemployment Compensation Commission v. Harvey*, 227 N.C. 291, 42 S.E. 2d 86 (1947); *Prudential Ins. Co. of America v. Powell*, 217 N.C. 495, 85 S.E. 2d 619 (1940). As a taxing statute, Chapter 96 is to be construed strictly against the taxing authority and in favor of the taxpayer. *See In re Assessment of Franchise Taxes*, 1 N.C. App. 133, 160 S.E. 2d 128 (1968). We find that the use of the terms "employer" and "employment" in Chapter 96 is unclear and ambiguous, owing to the significant distinctions be-

tween the specific defined term and the generic term and the lack of contextual guides to where one or the other is appropriate for use, and this lack of clarity makes it difficult to determine what the cited terms mean when used in the expression "employer subject to this Chapter" and in N.C. Gen. Stats. § 96-11(d). We further find that the interpretation of the statute urged by petitioner would work a harsh and inequitable result, that result being apparently contrary to the intent of the Legislature as expressed elsewhere in Chapter 96. Accordingly, we hold that where an employer, otherwise subject to the provisions of Chapter 96, is exempted from those provisions by legislative action and by legislative action that exemption is subsequently terminated, and additionally, where there have been no changes in the circumstances or activities of the employer, upon reinstatement of liability under Chapter 96 that employer is entitled to credit for its prior account balance, and that employer's contribution rate should be determined primarily by reference to its former experience rating at the time of its exemption. The burden will be upon the Commission to show what, if any, changes in circumstances have come about which would justify an upward revision of that employer's rate of contribution. The order of the trial court is affirmed; the cause is remanded to the Superior Court with instructions to remand to the Employment Security Commission for further proceedings not inconsistent with this opinion.

Affirmed and remanded with instructions.

Judges PARKER and WEBB concur.