IDA S. DAVIS v. CORNING GLASS WORKS AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 8210SC1176

(Filed 6 December 1983)

**Master and Servant § 108.1— unemployment compensation—misconduct connected with work—violation of employer's attendance rules**

An employee was discharged for misconduct connected with her work for deliberately violating the employer's attendance rules and was thus not entitled to unemployment benefits where the employee was on probation due to absenteeism and tardiness before going on a medical leave of absence; the employee knew of the employer's reasonable policy that medical leaves of absence could be granted or extended only upon the request of the employee's physician; the employee's doctor certified that the employee would be able to return to work on 1 December, and the employer ordered her to return to work on that date; the employee did not return to work until 2 December; and the employee failed to have her medical leave extended or her absence on 1 December excused by a statement from her attending physician.

APPEAL by claimant from *Battle, Judge.* Order entered 21 June 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 28 September 1983.

Claimant-employee appeals from the judgment of the superior court which affirmed the Employment Security Commission's decision to disqualify claimant from receiving unemployment benefits because she was discharged for misconduct connected with her work.

*East Central Community Legal Services, by Victor J. Boone, for claimant appellant.*

*Donald R. Teeter, for Employment Security Commission of North Carolina, appellee.*

*Bailey, Dixon, Wooten, McDonald & Fountain, by John N. Fountain and Gary K. Joyner, for Corning Glass Works, appellee.*

BECTON, Judge.

I

Employer, Corning Glass Works (Corning), granted claimant, Ida Davis, a medical leave of absence for toe surgery effective 2 July 1980. During the leave, Davis received disability benefits.

Corning realized in early October that Davis was attending classes at a local university under Corning's reimbursement employee program. Corning felt that Davis could return to work if she could attend classes, since her job required her to sit 97% of the time. The company doctor confirmed that the operation should not have required such a long convalescence. After Davis had been examined by the company doctor, Corning, in a letter, ordered Davis to report to work on 29 October 1980 "or you will no longer be considered an employee of Corning Glass Works." Davis's personal physician, Dr. Ayers, notified Corning on 28 October 1980 that a recent x-ray showed the need for further surgery. Davis's leave was extended.

At the end of November, Ayers certified to Corning that Davis would be able to return to work on 1 December 1980. In a letter dated 26 November 1980, Corning ordered Davis to return to work on 1 December 1980 at 7:00 a.m. Corning warned her that her disability benefits would be terminated as of that date. Davis

did not return to work on 1 December 1980. Instead, she called the plant nurse at 9:05 a.m. According to the Employment Security Commission's (Commission) findings, Davis told the nurse "that she was unable to report to work because she had hit her foot on the leg of the coffee table the previous night and it was very sore; that she would return to work on the following day if it felt better." When Davis reported for work on 2 December 1980, she was informed that she had been terminated effective 1 December 1980. Davis did not present a doctor's excuse on 2 December 1980 or at any time thereafter.

Davis's work record, prior to the medical leave of absence, had been marked by chronic absenteeism and tardiness. Shortly before the leave, on 5 May 1980, Davis was suspended for three days, the second of three steps in Corning's absenteeism program. The absenteeism program came into play when an employee had more than three unexcused absences within a ninety-day period. With each additional violation, the employee took another step towards termination. Davis's suspension, the second step, was the final warning. Termination, the third and final step, would automatically result with the next violation. Thus, Davis left on her medical leave of absence just one step short of termination.

## II

Davis's sole exception and assignment of error relates to the Commission's conclusion that Davis was disqualified from unemployment benefits because she had been discharged for misconduct connected with her work. Since the superior court simply affirmed the Commission's decision, we will refer to the Commission's findings and conclusions.

We note that Davis failed to except to the Commission's findings of fact. "When no exceptions are made to the findings of fact, they are presumed to be supported by competent evidence and are binding on appeal." *Anderson Chevrolet/Olds, Inc. v. Higgins,* 57 N.C. App. 650, 653, 292 S.E. 2d 159, 161 (1982). As the reviewing Court, we are left to determine whether the findings of fact support the Commission's conclusion and its resulting decision. *State ex rel. Employment Security Comm'n v. Jarrell,* 231 N.C. 381, 57 S.E. 2d 403 (1950).

The Commission shall disqualify a claimant for benefits if it determines that she was discharged from employment for miscon-

duct connected with her work. N.C. Gen. Stat. § 96-14(2) (1981). The General Assembly had not defined misconduct within the context of the statute at the time claimant was disqualified. Recently, our Supreme Court approved the rule recognized by this Court and the majority of other jurisdictions. *See Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 289 S.E. 2d 357 (1982).

> [T]he term 'misconduct' [in connection with one's work] is limited to conduct evincing such wilful or wanton disregard of an employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. . . .

*In re Collingsworth*, 17 N.C. App. 340, 343, 194 S.E. 2d 210, 212 (1973) (quoting *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 259, 296 N.W. 636, 640 (1941)). Effective 1 August 1983, the General Assembly codified the *Collingsworth* rule at N.C. Gen. Stat. § 96-14(2) (Supp. 1983).

Under the *Collingsworth* rule, "misconduct" encompasses an employee's deliberate violations of her employer's reasonable attendance rules as well as her failure to give her employer proper notice of absences. *Butler v. J. P. Stevens & Co., Inc.*, 60 N.C. App. 563, 299 S.E. 2d 672, *disc. rev. denied*, 308 N.C. 191, 302 S.E. 2d 242 (1983); *see* Annot., 58 A.L.R. 3d 674, 685 (1974). In the case before us, the Commission made the following pertinent findings of fact:

> 2. Prior to the claimant's going on leave, she was *on probation* due to absence from work and tardiness in reporting to work.

> 3. The employer has a *known, reasonable policy* that provides that medical leaves of absence can be granted or extended only upon the request of the employee's physician. *The claimant was aware of this policy.*

>       . . .

7. When the claimant reported to work at the usual time on December 2, 1980, . . . she did not present a doctor's excuse for the previous day's absence, or to extend the leave of absence. The plant nurse has no authority to either grant or extend a medical leave of absence, nor did the nurse purport to excuse the claimant's absence on December 1, 1980.

8. At Corning Glass, a doctor's statement is the basis for approval or disapproval or an employee's absence for alleged illness or disability. [Emphasis added.]

From these findings the Commission could reasonably conclude that Davis deliberately violated Corning's attendance rules by failing to report for scheduled work at the end of a medical absence, or, in the alternative, by failing to have the leave extended, or the absence excused, by a statement from her attending physician. In this instance, Davis's deliberate violations triggered the third and final step in Corning's absenteeism program—termination. Therefore, we hold that the Commission's findings support its conclusion that Davis had been discharged for "misconduct connected with her work."

On these facts, the Commission's decision to disqualify Davis for unemployment benefits was appropriate. The superior court did not err in affirming the Commission's decision.

Affirmed.

Judges JOHNSON and BRASWELL concur.