LORI P. SMITH, PETITIONER-APPELLANT v. SPENCE & SPENCE, ATTORNEYS, AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA, RESPONDENTS-APPELLEES

No. 8511SC623

(Filed 20 May 1986)

**Master and Servant § 108.1— unemployment compensation—discharge based on fault not amounting to misconduct**

 Plaintiff employee's delinquency in her personal financial affairs which caused a detrimental effect on her employer's relationship with his clients who were creditors of the employee constituted substantial fault on the employee's part connected with her work not rising to the level of misconduct for which the employee could be terminated, and the Employment Security Commission could therefore disqualify plaintiff secretary from receiving unemployment benefits for a period of four weeks pursuant to N.C.G.S. § 96-14(2A).

APPEAL by petitioner from *McConnell, Judge.* Judgment entered 12 February 1985 in Superior Court, JOHNSTON County. Heard in the Court of Appeals 21 November 1985.

 *East Central Community Legal Services by Reynauld M. Williams for petitioner appellant.*

 *Employment Security Commission of North Carolina Chief Counsel T. S. Whitaker by Staff Attorney Jane H. Dittmann for respondent appellee, Employment Security Commission.*

COZORT, Judge.

 The question presented by this appeal is whether an employee's delinquency in her personal financial affairs which caused a detrimental effect on her employer's relationship with his clients who were creditors of the employee constitutes "substantial fault on the employee's part connected with her work not rising to the level of misconduct" for which the employee may be terminated. We hold the conduct of the secretary does rise to the level of substantial fault, and we affirm the superior court's Judg-

ment upholding the Decision of the Employment Security Commission of North Carolina to disqualify the secretary from receiving unemployment benefits for a period of four weeks, pursuant to G.S. 96-14(2A). The pertinent facts and procedural history follow.

Claimant Lori P. Smith was employed as a legal secretary for the Johnston County law firm Spence and Spence. As of 8 June 1984 she had been employed by the firm for five years and one month. Claimant had encountered personal financial difficulties the entire time of her employment. The senior partner of the law firm, Robert A. Spence, Sr. (hereinafter "employer"), knew of her financial difficulties and had many times assisted her by paying her early. On one occasion, he endorsed a bank note for her for $1,000 to enable her to help straighten up her affairs. When the claimant defaulted on the note, the employer paid it off, and while he obtained about $500 from the man living with the claimant who also endorsed the note, he made no effort to get claimant to repay him the remaining $500, choosing instead to forgive her debt to him. On another occasion, the sheriff's office called on the claimant at the employer's office to collect on a judgment against claimant and her former husband. Outside of her financial difficulties, claimant was an excellent employee, one of the best secretaries the employer had employed in his 34 years of practicing law.

On Friday, 8 June 1984, the employer was on his way to the courthouse when he encountered Ms. Margaret Lassiter, a public accountant described by the employer as a "very close client" and a business associate. Ms. Lassiter told the employer that she had rented an apartment to the claimant and that the claimant had moved out to rent a more expensive apartment, owing Ms. Lassiter about $1,600 in delinquent rent payments and advancements Ms. Lassiter had made to pay claimant's electric bill. When the employer returned to his office, he asked claimant about the debt to Ms. Lassiter. Claimant told employer she believed the amount she owed Ms. Lassiter was around $1,100-$1,200. The employer told claimant she had ten days to straighten up her financial affairs, or she would have to look for another job. He told her he was afraid her creditors might start taking their business elsewhere instead of dealing with the employer's law firm. The claimant worked the following Monday and Tuesday. She asked

for and received vacation for Wednesday, Thursday and Friday. She attempted to arrange some financial assistance to help pay off her debts; however, her efforts were unsuccessful. On Monday, 18 June, claimant returned to the office. She was asked by Robert Spence, Jr., employer's son and partner, whether she had any prospects for a job. Upon hearing that she did not, he offered the law firm as a reference. Claimant boxed up her personal belongings, left her keys with another secretary, and left.

Claimant registered for work and filed a claim for unemployment benefits at the Goldsboro Local Office of the North Carolina Employment Security Commission. The Claims Adjudicator for the Commission determined that claimant was disqualified from receiving benefits because her reason for leaving employment did "not constitute with good cause attributable to the employer." Claimant appealed to an Appeals Referee, who issued a decision upholding the disqualification of benefits, modified to provide that claimant was "disqualified for unemployment benefits for a period of nine weeks," because her discharge was for "substantial fault connected with the work." On appeal, the Commission affirmed the decision of the Appeals Referee, further modifying the decision to reduce the disqualification of benefits to four weeks, finding that "the claimant's conduct was not intended to harm the employer." Claimant appealed to the Superior Court of Johnston County where the presiding judge affirmed in its entirety the decision of the Commission. Claimant appeals that decision to this Court.

Claimant presents three issues for consideration by this Court: (1) whether certain findings of fact made by the Commission are supported by competent evidence; (2) whether the Commission's decision is correct as a matter of law; and (3) whether the decision of the Commission violates the claimant's constitutionally protected right to privacy. We affirm.

Our scope of review is:

In considering an appeal from a decision of the Employment Security Commission, the reviewing court must (1) determine whether there was evidence before the Commission to support its findings of fact and (2) decide whether the facts found sustain the Commission's conclusions of law and its resulting decision. *Employment Security Comm. v. Jarrell*, 231 N.C. 381, 57 S.E. 2d 403 (1950).

*Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982).

In her first assignment of error, claimant challenges four findings of fact made by the Appeals Referee, subsequently affirmed by the Commission and the trial court:

2. Claimant was discharged from this job because her personal financial affairs adversely affected and caused embarrasment [*sic*] to the employer's business.

\* \* \* \*

4. During this period of time, claimant has on a continuing basis experienced financial difficulties occasionally resulting in creditors contacting her at the employer's place of business. In addition, the employer had been contacted by the sheriff's department in reference to the service of a summons for the execution of a judgment.

5. Claimant had been previously advised of the embarrasing [*sic*] nature of her personal financial problems and had made attempts, though [*sic*] the assistance of the employer via the co-signing of a note, to straighten out her affairs.

\* \* \* \*

7. Claimant was substantially indebted to a client of the employer.

At the hearing before the Appeals Referee, the employer testified that the claimant "had had financial problems throughout her employment." He testified that the sheriff's office came to his office once to collect a judgment against claimant and her former husband. He testified that he helped her borrow money from a bank by endorsing a note for her and that the banker called him because claimant defaulted on the note. The employer paid off the note, received $500 from a co-endorser, and forgave the remaining $500 claimant owed him. The employer testified that he was told by Ms. Lassiter that claimant owed her $1,600, and he further testified, "I have done a lot of work with Ms. Lassiter. She did a lot of referrals." The employer further testified:

[T]hese people called in the office, the sheriff collecting judgments in the office, and a very close client complaining

about it, and knowing they had to go through Lori to get to me, so feeling that they would hesitate to even come to me anymore, they had to go through Lori, I had to have it straightened out, I asked her to have it straightened out. . . .

\* \* \* \*

[S]he had become indebted to so many people who were making demands through court and otherwise, and through the sheriff's office in the execution of judgments, some of the people being very close business associates, that it was reflecting upon the office, the credibility of the office, and could not be allowed to continue, and I wanted her to do something about it . . . straighten them up so there wouldn't be demands from the office, and to the office, so that the office wouldn't suffer adversely for it and the practice wouldn't suffer, and the integrity of the practice wouldn't suffer.

\* \* \* \*

I told her I couldn't, that we couldn't allow that. I don't know my exact wording . . . I don't mean to misrepresent anything but to me she knew the relationship between Margaret Lassiter and me, I mean professional relationship, but it, it wasn't one isolated incident. This has been building up and building up and I had asked her before to get her affairs straightened out. That was one of the purposes of my signing that note, was to help her, and I was disappointed at that time, but I was told that everything would be cleared up . . . .

\* \* \* \*

[S]he knew . . . that Ms. Lassiter and I had a good professional relationship, and any adverse conduct on her part with Ms. Lassiter would reflect upon the relationship I had with Ms. Lassiter and that affected my firm . . . .

A review of the testimony of the employer shows there was ample evidence to support each of the findings challenged here by the claimant. The claimant's first assignment of error is overruled.

Claimant's second contention is that her conduct did not rise to the level of substantial fault connected with her work because

her conduct was not in relation to her employer's interest or her duties and obligations to her employer. She argues further that there was no requirement in her job concerning the management of her personal financial affairs; thus, it was not "connected with her work." We do not agree with claimant's argument.

Claimant was disqualified for benefits under G.S. 96-14(2A), which provides that an individual shall be disqualified for benefits

> [f]or a period of not less than four nor more than 13 weeks . . . if it is determined by the Commission that such individual is, at the time the claim is filed, unemployed because he was discharged for substantial fault on his part connected with his work not rising to the level of misconduct.

G.S. 96-14(2A) is a recent addition to the Employment Security Law of North Carolina. Subsection (2A) was added to Section 96-14 in the 1983 Session of the North Carolina General Assembly, to become effective 1 August 1983 (1983 N.C. Sess. Laws, ch. 625, Secs. 6, 17). While G.S. 96-14(2A) does not give a precise definition of or clear examples of what constitutes such "substantial fault," it offers the following guidelines:

> Substantial fault is defined to include those acts or omissions of employees over which they exercised reasonable control and which violate reasonable requirements of the job but shall not include (1) minor infractions of rules unless such infractions are repeated after a warning was received by the employee, (2) inadvertent mistakes made by the employee, nor (3) failures to perform work because of insufficient skill, ability, or equipment. Upon a finding of discharge under this subsection, the individual shall be disqualified for a period of nine weeks unless, based on findings by the Commission of aggravating or mitigating circumstances, the period of disqualification is lengthened or shortened within the limits set out above.

To date there have been no decisions in the appellate courts of North Carolina construing the phrase "substantial fault on [her] part connected with [her] work not rising to the level of misconduct."

It is clear from the statute that the conduct can be less egregious than that necessary to constitute misconduct. Miscon-

duct has been defined repeatedly by this Court and the Supreme Court as " 'conduct which shows a wanton or wilful disregard for the employer's interest, a deliberate violation of the employer's rules, or a wrongful intent.' " *In re Miller v. Guilford County Schools*, 62 N.C. App. 729, 731, 303 S.E. 2d 411, 412 (1983), quoting from *Intercraft Industries Corp. v. Morrison*, 305 N.C. 373, 375, 289 S.E. 2d 357, 359 (1982). We have since held that *unintentional* rule violations satisfy the requirements of misconduct if the actions "manifested such a degree of carelessness as to show a substantial disregard of [an] employer's interests and of [the] duty to protect those interests." *Douglas v. J. C. Penney Co.*, 67 N.C. App. 344, 346, 313 S.E. 2d 176, 178-79 (1984). And, we have also held that the specific acts in question do not have to occur at the work site or directly in connection with the work assignments, if the resulting consequences violate a standard of behavior which the employer has a right to expect of his employee. *In re Collins v. B & G Pie Co.*, 59 N.C. App. 341, 296 S.E. 2d 809 (1982) (claimant's failure to make restitution payments resulting in revocation of probation, incarceration for two months, and unexcused absences from work held to be misconduct connected with his work).

Reading G.S. 96-14(2A) with guidance from the "misconduct" cases cited above, we hold the personal financial mismanagement of the claimant constituted substantial fault connected with her work not rising to the level of misconduct. The actions of the claimant, though unintentional and occurring primarily away from her work, had the effect of posing a serious threat to the reputation of her employer, the integrity of his practice, and his relationship with clients and associates. It is reasonable for an attorney to require of his employees that their personal affairs should be handled in such a way as to keep from damaging the reputation and integrity of the law firm. It is not necessary that the employer be able to prove an actual loss of clients, etc. The damaging effect of claimant's actions on his law practice, which is founded on trust and confidence in him and his employees, is obvious.

Claimant's last assignment of error is that the decision violates her right to privacy. She argues that the Commission's decision had the effect of imposing its standards of conduct on claimant's handling of her personal affairs. Claimant's argument is frivolous. Any right to privacy the claimant might have been able

to claim concerning her personal financial affairs was certainly waived when her management of those affairs caused those matters to come to the attention of her employer. Furthermore, it was the detrimental effect her mismanagement had on her employer's interests which became the basis for her benefits disqualification, not the mismanagement itself. This assignment of error is overruled.

The decision below is

Affirmed.

Judges WEBB and BECTON concur.