IN THE MATTER OF: STATE OF NORTH CAROLINA, EX REL. EM-
PLOYMENT SECURITY COMMISSION OF NORTH CAROLINA v. PAUL'S
YOUNG MEN'S SHOP, INC. (EMPLOYER No. 56-67-043); PAUL C.
CAPPS, TRADING AS RICKY'S (EMPLOYER No. 57-67-040); DIAMOND
OUTLET, INC. (EMPLOYER No. 59-67-058); SHRUNKEN HEAD,
INC. (EMPLOYER No. 56-67-039); GEMS, INC. (EMPLOYER No.
59-67-057); COOPERATIVE SERVICE, INC. (EMPLOYER No.
73-67-012)

No. 764SC382

(Filed 5 January 1977)

1. **Master and Servant § 111— unemployment compensation — appeals
   from Employment Security Commission — authority of reviewing court**

   In appeals from the Employment Security Commission the review-
   ing court may determine upon proper exceptions whether the facts
   found by the Commission are supported by competent evidence and
   whether the findings so supported sustain the legal conclusions and
   the award made, but the reviewing court may not consider the evi-
   dence for the purpose of finding the facts for itself.

2. **Master and Servant § 111— unemployment compensation — appeals —
   remand for findings of fact**

   If the findings of fact of the Employment Security Commis-
   sion are insufficient to enable the reviewing court to determine the
   rights of the parties upon the matters in controversy, the proceeding
   must be remanded to the end that the Commission make proper find-
   ings.

3. **Master and Servant § 107— unemployment compensation — independent
   finding by reviewing court — harmless error**

   Where all parties recognized that for many years the several
   defendants followed an erroneous method of reporting and paying con-
   tributions to the State Unemployment Insurance Fund, and the essen-
   tial problem presented by the case concerned what measures could
   be lawfully applied to correct the error, language in the judgment of
   the reviewing court that the method used was established with the
   advice of Employment Security Commission employees and was not
   disapproved in Commission audits, if viewed as constituting an in-
   dependent factual finding which the court had no authority to make,
   was at most harmless error since it was not necessary to determine
   the source of the original error.

4. **Master and Servant § 107— Unemployment Insurance Fund — con-
   tributions of corporations erroneously paid through proprietorship —
   correction by Employment Security Commission**

   Where the contributions of three corporations to the Unemploy-
   ment Insurance Fund were erroneously paid for a number of years
   through the account of a sole proprietorship, the Employment Security
   Commission had authority to set up accounts retroactively in the name
   of each of the three corporations, to allocate to each account the con-

tributions previously paid through the sole proprietorship's account on the wages of employees of each particular corporation, to make charges against each account for all amounts which would properly have been chargeable thereto had the account been in existence from the time when each corporation became subject, as a separate employing unit, to the provisions of the Employment Security Law, and then to compute the appropriate rate at which each of the three corporations should have paid contributions, year by year, and thus arrive at the total amount now properly payable by each.

APPEAL by plaintiff from *Lanier, Judge.* Judgment entered 17 February 1976 in Superior Court, ONSLOW County. Heard in the Court of Appeals 16 September 1976.

This is a proceeding under the Employment Security Law, G.S. Ch. 96, to determine the liability of the several defendants under G.S. 96-9 to make payment of contributions to the State Unemployment Insurance Fund. After an investigation by one of its field representatives, the Employment Security Commission in 1972 made an administrative determination that three of the defendant corporations, Paul's Young Men's Shop, Inc., Diamond Outlet, Inc., and Gems, Inc., were liable for unpaid contributions. Timely protests were filed, and the matter was set for an evidentiary hearing before a hearing officer of the Commission. At this hearing, which was held 1 November 1972, evidence was presented to show the following:

Paul C. Capps is the president and he and his wife and children are the stockholders of each of the three corporations. For many years Paul C. Capps has conducted a business as a sole proprietor under the trade name of "Ricky's." Extending back to about 1956, Capps, trading as Ricky's, has been assigned an employer account number by the Commission through which he has reported and paid all contributions due on account of wages paid to all employees of Ricky's. At some time prior to 1961 Capps formed Paul's Young Men's Shop, Inc., and Gems, Inc., to engage in separate retail businesses. At least since 1961, Capps reported the employees of these businesses and paid contributions on their wages through the account number of Ricky's. In 1963 Capps opened Diamond Outlet, Inc., which he at first operated as a separate employment unit with its own employer account number assigned to it by the Commission. In 1964 Capps filed with the Commission a request for transfer, in which he indicated that as of 1 April 1964 he, trading as Ricky's, had acquired all of the business and assets of Diamond Outlet, Inc.

On the basis of this request, the Commission approved the transfer of the experience rating account theretofore assigned to Diamond Outlet, Inc., to Capps, trading as Ricky's. Thereafter, however, Diamond Outlet, Inc., continued to conduct business and to have persons in its employment, such employees being reported to the Commission under the employer account number assigned to Capps, trading as Ricky's. Effective 11 February 1971 Diamond Outlet, Inc., acquired the total business and assets of Gems, Inc.

During each of the years 1967 through 1972, Paul's Young Men's Shop, Inc., had four or more persons in its employment for twenty or more weeks. In 1967 and 1968 Diamond Outlet, Inc., and Gems, Inc., were operating as separate businesses, but neither had four or more employees for twenty or more weeks in either of those two years. During each of the years 1969 through 1972, Diamond Outlet, Inc., did have four or more persons in its employment for twenty or more weeks. In 1969 and 1970 Gems, Inc., had four or more persons in employment for twenty or more weeks. Gems, Inc., ceased to do business after the first quarter of 1971 when Diamond Outlet, Inc., acquired all of its business and assets. The wages paid to the employees of Diamond Outlet, Inc., and the wages paid to employees of Gems, Inc., during the years 1967 and 1968 were reported through Ricky's account number and contributions were paid on those wages, although neither corporation was liable for those years since neither had in its employment four or more persons for twenty or more weeks during either of those years.

The net effect of reporting all employees of the three corporations and paying contributions on their wages through Ricky's account number was to build up the reserves in the account of the proprietorship, Ricky's, and to allow the three corporations to have the advantage of Ricky's lower rate of contribution. For the years 1967 through 1971, the rates of contribution assigned to Ricky's account ranged from a high of 2.3% to a low of .5%. If the corporations had reported their employees and paid contributions on their wages through separate accounts, each would have been required to pay at the standard rate of 2.7% until their separate credit reserve ratios met statutory requirements so as to entitle them to reduced rates.

According to the Commission's records, an audit of Ricky's, covering the years 1961-63, was conducted in 1965. Although

during this period at least two of the above named corporations were reporting and paying through Ricky's account, no discrepancies were found in the account or in the method of reporting. Helen Capps, the wife of Paul C. Capps, kept the books for the proprietorship and all three corporations and furnished these records to the Commission's field representatives when they came to examine them. She testified that the Employment Security Commission people came in "roughly annually" to examine the books; that each time one came, she would give him the Ricky's folder; and that this folder contained the employment sheets for all employees, information on each of the three corporations, and personal information on the employees of each corporation naming which corporation they worked for. The investigation in 1972 was the first time this method of reporting was questioned.

After completion of the evidentiary hearing held 1 November 1972, this matter was heard on 29 January 1973 by the Chairman of the Employment Security Commission. On 26 July 1973 the Chairman issued his order, making findings of fact and setting forth his opinion, in which the Chairman stated the questions presented to be as follows:

> "Briefly recapitulating what has transpired, Paul C. Capps, Trading as Ricky's has been a liable and covered employer throughout the entire period in question and has paid the contributions due on its employees. Additionally, Paul C. Capps, trading as Ricky's, has reported as its own employees persons performing services for Gems, Inc., Diamond Outlet, Inc., and Paul's Young Men's Shop, Inc.

> The questions raised are, in essence: (1) What will happen to the moneys paid in by Paul C. Capps, trading as Ricky's, which was based upon the earnings of persons not in its employ? and (2) What options are available, if any, to the several employing units who have been determined liable in their own right, but whose employees were reported under Paul C. Capps, trading as Ricky's?"

After considering applicable statutes, the Chairman ruled that "it is necessary that the following take place:

(a)  All contributions erroneously paid by Paul C. Capps, trading as Ricky's, from 1967 through the present will have to be refunded to Ricky's.

(b) Beginning January 1, 1969, Diamond Outlet, Inc., will have to report the wages paid to its employees and pay contributions on those wages at the rate of 2.7 percent.

(c) Gems, Inc., will have to make reports and pay contributions on the wages paid to its employees at the rate of 2.7 percent from the period beginning January 1, 1969, through February 11, 1971. Subsequent to February 11, 1971, Diamond Outlet, Inc., as successor, will have to report as its own any employees acquired when it succeeded Gems, Inc.

(d) Paul's Young Men's Shop, Inc., will have to make reports and pay contributions on the wages paid to its employees at the rate of 2.7 percent from the period beginning January 1, 1967, through 1972 and thereafter."

This matter was heard before the Full Commission on 11 December 1973, and on 20 December 1973 the Full Commission issued its order in which it overruled the exceptions filed to the Chairman's opinion, affirmed the opinion of the Chairman in its entirety, and adopted that opinion as its own. To this order the defendant employing units filed exceptions and appealed to the Superior Court.

The matter was heard in the Superior Court at the February 1976, civil session held in Onslow County. On 17 February 1976 the court entered judgment in which it concluded that "there is nothing in the Statutes to prohibit the Commission from going back and making a proper allocation of the contributions erroneously paid by taxpayer to the proper employing units." Accordingly, the court remanded the case to the Commission

"with the specific direction that the Commission give the taxpayer credit for contributions erroneously made under the method of reporting, for the period beginning January 1, 1964, through December 31, 1972.

In making the proper allocations and computations to give the taxpayer credit for the contributions he has made through the entity of Ricky's, the Commission shall treat each of the employing units, i.e., Diamond Outlet, Inc., Gems, Inc., Paul's Young Men's Shop, and Ricky's as if

each of them were a separate and qualified entity liable since January 1, 1964, as set forth in taxpayer's Exhibit 2.

For the period beginning January 1, 1973 to the present, each employing entity set out above shall be assigned a proper experience rate based upon the computation of its reserves as of December 31, 1972, after the Commission has given the credits to the employing entities as set out above.

This 17 day of February, 1976.

s/ RUSSELL J. LANIER
Judge Presiding"

From this judgment, the Commission appealed.

*Howard G. Doyle, H. D. Harrison, Jr., Garland D. Crenshaw, and Thomas S. Whitaker for Employment Security Commission of North Carolina, appellant.*

*Akins, Harrell, Mann & Pike, by Bernard A. Harrell for defendant appellees.*

PARKER, Judge.

Appellant's first assignment of error is directed to following language in the judgment of the Superior Court from which this appeal has been taken:

"While the Court is aware that it is bound by such findings of fact of the Commission as are supported by competent evidence (G.S. Sec. 96-4(m)), and while the Court makes no additional findings of fact, it is observed that, according to the evidence, the method of reporting the employee contributions of the three employing units involved was originally established with the advice of the Commission employees. Further, it appears from the evidence that the taxpayer, while paying and reporting under an erroneous method, nevertheless paid the taxes due on all employees. Regular review and audits by the Commission did not disapprove the method of paying all employees through Ricky's."

Appellant contends that by including this language in its judgment the Superior Court, despite its disclaimer, made an in-

dependent finding of fact which it had no power to do and that it thereby committed reversible error. We do not agree.

The Employment Security Commission has been vested by statute with "the power and authority to determine any and all questions and issues of fact" arising under the Employment Security Law. G.S. 96-4(m). The same statute provides that on appeal to the Superior Court from a decision of the Commission in a matter over which it has jurisdiction, the decision or determination of the Commission "shall be conclusive and binding as to all questions of fact supported by any competent evidence."

[1, 2] Interpreting similar provisions in our Workmen's Compensation Act, our Supreme Court has held that in appeals from the Industrial Commission the reviewing court may determine upon proper exceptions whether the facts found by the Commission were supported by competent evidence and whether the findings so supported sustain the legal conclusions and the award made, but in no event may the reviewing court consider the evidence for the purpose of finding the facts for itself. *Byers v. Highway Comm.,* 275 N.C. 229, 166 S.E. 2d 649 (1969) ; *Pardue v. Tire Co.,* 260 N.C. 413, 132 S.E. 2d 747 (1963) ; *Brice v. Salvage Co.,* 249 N.C. 74, 105 S.E. 2d 439 (1958). "If the findings of fact of the Commission are insufficient to enable the Court to determine the rights of the parties upon the matters in controversy, the proceeding must be remanded to the end that the Commission make proper findings." *Pardue v. Tire Co., supra,* p. 416. The same principles govern the scope of judicial review on appeal from decisions of the Employment Security Commission. *See, Employment Security Com. v. Kermon,* 232 N.C. 342, 60 S.E. 2d 580 (1950).

[3] Applying these principles in the present case, we find that, although there was uncontradicted evidence from which the Employment Security Commission could have found as a fact that "the method of reporting the employee contributions of the three employing units involved was originally established with the advice of the Commission employees," and that "[r]egular review and audits by the Commission did not disapprove the method of paying all employees through Ricky's," the Commission made no such findings. Indeed, the Commission made no findings, one way or the other, with regard to these matters. If findings as to these matters were necessary for a proper determination of this case, the case should have been remanded to the

Commission to the end that the Commission make proper findings. In our opinion, however, factual findings with respect to the matters referred to in that portion of the Superior Court's judgment to which appellants' first assignment of error is directed are not necessary for a proper determination of this case. All parties recognize that for many years an erroneous method of reporting and paying contributions was followed by the several defendants. The essential problem presented by this case concerns what measures may now be lawfully applied to correct the error, now that it has been recognized. To solve that problem it is not necessary that the source of the original error be determined. Therefore, the language in the Court's judgment which is the subject of appellant's first assignment of error may be treated as surplusage. The inclusion of this language in the judgment, even if it be viewed as constituting an independent factual finding which the Court had no authority to make, was at most harmless error. Accordingly, appellant's first assignment of error is overruled.

Although, as above noted, it is not necessary to determine the source of the erroneous method of reporting and paying contributions, which was for so many years followed by the defendants in this case and was for an equally long time accepted without question by the plaintiff, we do feel it pertinent to observe that there was no finding by the Commission, nor was there any evidence to support a finding, that defendants ever acted in bad faith. Indeed, the evidence is quite to the contrary, for it shows without question, and the Commission found as a fact, that two of the defendants, Diamond Outlet, Inc., and Gems, Inc., reported wages paid to their employees and contributions on account of such wages were paid to the Commission through the medium of Ricky's account number for the years 1967 and 1968, even though neither of those corporations had a sufficient number of employees for the requisite number of weeks to be liable for payment of contributions during those years. All of the defendants here were owned and controlled by the same interest, Mr. Paul C. Capps and the members of his family. Under the Unemployment Compensation Law as originally enacted, all of the defendants collectively would have constituted but one "employing unit." Sec. 19 (f) (4), Ch. 1, Extra Session, 1936. Thus, the method of reporting and paying contributions which was for so many years followed by the defendants in this case would not only have been proper, but would have been required, by the law as previously written. *Unemploy-*

*ment Compensation Com. v. Coal Co.*, 216 N.C. 6, 3 S.E. 2d 290 (1939). The statute was later changed, but suffice it to say that nothing in this record even suggests any improper motives on the part of the defendants in failing to comply with the changes made.

[4]    This brings us to the essential question presented by this appeal, which is: What steps may now be taken to correct the error in reporting and paying contributions which all parties now recognize occurred? The Commission in its order and through its attorneys on this appeal has taken the position that the only thing which it has legal authority to do under the controlling statutes is to deal with the several defendants, Paul C. Capps, trading as Ricky's, Paul's Young Men's Shop, Inc., Diamond Outlet, Inc., and Gems, Inc., each as a completely separate and unrelated entity; to recognize that Mr. Capps, trading as Ricky's, has erroneously reported wages paid to persons who were not his employees and that he is entitled to a refund of the erroneously paid contributions, going back, however for a period of only five years; and then to deal with each of the three corporate defendants as though each was a delinquent employing unit which had never reported any wages paid to any of its employees and had never paid any contributions to the Commission on account of such wages. In taking this position as to the three corporations, the Commission is deliberately ignoring, as being without legal significance, the fact that every penny of taxable wages paid to every employee of each of the corporations was actually fully reported to the Commission and contributions were paid to the Commission on account of such wages, though the reporting and payment was, by error, made under the account number of Ricky's. We find nothing in the governing statutes which requires such a harsh result. In *Unemployment Compensation Comm. v. Nissen*, 227 N.C. 216, 41 S.E. 2d 734 (1947), our Supreme Court, in reversing a judgment of the Superior Court which had affirmed an order of the Commission, found nothing in the Statutes to prevent the Commission from transferring a reserve account which was incorrectly standing in the name of a mortgagee, when it was later determined that the account should have been in the name of and the contributions should have been paid on the account of the mortgagor, for whom the mortgagee was acting simply as an agent in managing the mortgaged property. Accordingly, the Supreme Court held in that case that the reserve which had been created and credited to the mortgagee, the Metropolitan Life Insurance Com-

pany, by the Unemployment Compensation Commission (now the Employment Security Commission), by reason of contributions made by the Metropolitan on wages of employees employed at the Nissen Building in Winston-Salem should be transferred to the credit of Mrs. Nissen. Although the factual situation presented by that case is somewhat different from that presented in the present case, it did involve a situation where a reserve account had been mistakenly built up in the name of one employing unit, which had erroneously reported as its own employees persons who in reality were employees of another and had mistakenly paid to the Commission contributions on account of wages paid to such persons. Our Supreme Court found nothing in the statutes to prohibit correction of the error and ordered transfer of the reserve account. Similarly, in the present case we agree with the conclusion reached by Judge Lanier that "there is nothing in the Statutes to prohibit the Commission from going back and making a proper allocation of the contributions erroneously paid." Moreover, we find nothing in the statutes which prevents the Commission, under the circumstances of this case, from going back and setting up accounts retroactively in the names of each of the three corporations, allocating to each account the contributions heretofore paid (erroneously through the medium of Ricky's) on account of wages of employees of each particular corporation, and making charges against each account of all amounts which would properly have been chargeable thereto had the account been in existence from the time when each corporation became subject, as a separate employing unit, to the provisions of the Employment Security Law. This accomplished, the Commission should then compute the appropriate rate at which each of the three corporate defendants should have paid contributions, year by year, and thus arrive at the total amount properly payable by each, after each is given credit for the contributions heretofore paid on the taxable wages of its employees through the medium of Ricky's. This, essentially, is what Judge Lanier's order directed. There are, however, certain ambiguities in that order to which the appellant's brief directs attention. For example, the order appealed from directs the Commission to make the proper allocations and computations "as set forth in taxpayers Exhibit 2." The exhibit referred to was a computation prepared by a certified public accountant employed by the defendants. In its brief the appellant points out that the accountant, in preparing the exhibit, did not have access to the amounts of the administrative

costs or of benefits charged, both of which would be needed to make proper allocations and computations as to each account. However, the Commission itself does have access to those figures, and it can now make the proper retroactive allocations and computations. We hold that the statutes do not prohibit, and justice requires, that it should.

Accordingly, the judgment of the Superior Court should be modified to direct the Commission retroactively to set up the separate accounts, to make proper allocations of contributions and charges to each, and to compute the correct rates of contribution which should have been paid by each separate employing unit. As so modified, the judgment of the Superior Court is affirmed.

This cause is remanded to the Superior Court for judgment in accord with this opinion.

Modified and remanded.

Judges BRITT and CLARK concur.