IN THE MATTER OF PAUL S. GORSKI, ET AL. v. NORTH CAROLINA SYM-PHONY SOCIETY, INC. AND EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA

No. 8210SC478

(Filed 1 November 1983)

**Administrative Law § 8; Master and Servant § 111— review of administrative decision by superior court— scope of review exceeded**

In reviewing the decision of the Employment Security Commission, the superior court was functioning as an appellate court; therefore, it erred in determining unemployment compensation claims on grounds neither raised nor relied on in the proceedings appealed from.

Judge BECTON dissenting.

APPEAL by defendants from *Farmer, Judge.* Order entered 29 January 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 15 March 1983.

This case involves the unemployment compensation claims of sixty-two recent employees of the North Carolina Symphony Society, who were employed pursuant to a master contract between the Symphony and the claimants' union. The contract extended through the 1982-83 concert season, and on April 12, 1981, the Symphony notified the union, as the contract permitted, that the contract was being terminated as of April 26, 1981 because of the Symphony's inability to obtain necessary operating funds. Thereafter, the appellees filed claims for unemployment compensation with the defendant Commission, and after due notice their claims were heard by a Deputy Commissioner, who, on July 17, 1981, entered an order denying the claims. In doing so, the Deputy Commissioner concluded that the claimants had failed to show by the greater weight of the evidence that they had been available for other "permanent fulltime employment while filing claims for unemployment benefits." The grounds for this conclusion included findings that the claimants expected to resume their jobs

with the Symphony, which was raising funds, scheduling concerts for the next season, and negotiating a new contract with the union, as usual; they had been seeking only part-time and temporary employment in the Research Triangle area, and their seeming search for permanent full time employment as symphony musicians or teachers of music was not a real search for employment, since job opportunities in those fields are almost nonexistent.

Upon claimants' appeal to the Superior Court being heard, it was found that the appellees "were involved in a group temporary layoff," under certain regulations adopted by the Commission, and an order was entered directing the Commission to pay benefits for the first four weeks of the layoff, and to determine whether under the regulations actual registration for work was required of appellees as of the first day of the fifth consecutive week of their total unemployment. From this order both the Commission and the Symphony appealed.

*Judith E. Kincaid for plaintiff appellees.*

*Poyner, Geraghty, Hartsfield & Townsend, by Marvin D. Musselwhite, Jr. and Cecil W. Harrison, Jr., for defendant appellant North Carolina Symphony Society, Inc.*

*V. Henry Gransee, Jr. and Donald R. Teeter for defendant appellant Employment Security Commission of North Carolina.*

PHILLIPS, Judge.

In undertaking to decide these claims on grounds neither raised nor relied on in the proceedings appealed from, the Superior Court violated the fundamental rule that an appeal has to follow the trial. *Grissom v. N. C. Department of Revenue,* 34 N.C. App. 381, 238 S.E. 2d 311 (1977), *disc. rev. denied,* 294 N.C. 183, 241 S.E. 2d 517 (1978). The course of these claims had been inexorably set in the proceedings appealed from; it could not be changed thereafter. The basis for the claims as filed was not that the claimants had been temporarily laid off, but that their employment with the Symphony had been terminated and they were seeking other permanent full time employment. The evidentiary hearing before the Deputy Commissioner, in accord with the notice to which none of the parties objected, was devoted to only the following issue: "Whether the claimants' [sic] are able to,

available for, and actively seeking work without undue restriction or limitation." The forty-eight appellees who presented evidence all attempted to show to the Commission's satisfaction that their employment with the Symphony was over and they were available for permanent employment elsewhere, as the law governing benefits requires; none contended that they were temporarily laid off and not available for permanent employment. The appellants, on the other hand, undertook to show that the appellees did not meet the "available for work" standard established by G.S. 96-13(a)(3), since they expected to continue working for the Symphony, which was already preparing for the next concert season, and their efforts to obtain employment were so limited that they could not be successful. The Commission's decision, following the course the case had taken, was based on eleven findings of fact and numerous conclusions of law, all relating to the one issue raised; and in appealing therefrom, appellees stated for their only grounds that various of the findings were unsupported by evidence, and the conclusions of law that they were not genuinely attached to the work force and available for permanent full time work because of their continuing attachment to the Symphony and the limited market for their job skills were erroneous. Having gone that far on the course selected, the case could not be put on a different course by the Superior Court.

In reviewing the decision of the Employment Security Commission, the Superior Court was functioning as an appellate court. As such, its office was limited to determining two things: first, whether there was evidence before the Commission to support its findings of fact, and, second, whether the facts so found sustain the conclusions of law and resultant decision. G.S. 96-15(h)-(i); *In re Enoch*, 36 N.C. App. 255, 243 S.E. 2d 388 (1978). It had no authority to make new findings, *Employment Security Commission v. Paul's Young Men's Shop, Inc.*, 32 N.C. App. 23, 231 S.E. 2d 157, *disc. rev. denied*, 292 N.C. 264, 233 S.E. 2d 396 (1977), but was bound by all findings and conclusions properly made. *In re Steelman*, 219 N.C. 306, 13 S.E. 2d 544 (1941).

To what extent, if any, the Superior Court undertook to review the decision of the Commission in the manner required, the record does not show. Since our own review of the record convinces us that the Commission's findings of fact are all supported by evidence and sustain the conclusions and decision made, rather

than remand the matter for further proceedings, to the delay, inconvenience, and expense of the parties, we herewith vacate the order appealed from and remand to the Employment Security Commission for the reinstatement of its decision.

Vacated and remanded.

Judge ARNOLD concurs.

Judge BECTON dissents.

Judge BECTON dissenting.

In reviewing a decision of the Employment Security Commission, the superior court must "(1) determine whether there was evidence before the Commission to support its findings of fact and (2) decide whether the facts found sustain the Commission's conclusions of law and its resulting decision." *Intercraft Industries Corp. v. Morrison,* 305 N.C. 373, 376, 289 S.E. 2d 357, 359 (1982); *Employment Security Comm. v. Jarrell,* 231 N.C. 381, 57 S.E. 2d 403 (1950). I do not believe that the facts found in this case sustain the Commission's conclusions of law and decision. Believing further that the "group temporary layoff" issue was properly before the superior court and that the superior court properly executed its appellate function, I dissent.

N.C. Gen. Stat. § 96-15(i) (1981 & Supp. 1981), which establishes the procedure for an appeal from the Commission to the Superior Court of Wake County, provides that the appealing party must file a statement of the grounds upon which review is sought and the particulars in which it is claimed that the Commission erred. The statute further provides: "In any judicial proceeding under this section the findings of the Commission as to the facts, if there is evidence to support them, and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law."

In their notice of appeal, claimants contended that the Commission's conclusions of law, that claimants were not genuinely attached to the labor force and available for permanent full-time employment because of (a) their continuing attachment to the Symphony and (b) the limited market for their job skills and ex-

perience, were erroneous. Their notice of appeal also raised constitutional issues. Questions of law were thus presented to the superior court.

Under N.C. Gen. Stat. § 96-13(a) (1981 & Supp. 1981), an unemployed individual, to be eligible for benefits, must satisfy the Commission that (1) he has registered to work and thereafter has continued to report to the employment office; (2) he has made a claim for benefits; and (3) he is able to work and is available for work. The requirements of this statute have been amplified, however, by administrative regulations.

Pursuant to the authority granted by N.C. Gen. Stat. § 96-4(a) (1981 & Supp. 1981), the Commission has made rules and regulations to administer the Employment Security Act. One of these regulations administering G.S. § 96-13 is Employment Security Comm. Reg. 10.16 (1981), which provides for a "constructive registration for work" in a group temporary layoff situation, which is defined in Employment Security Comm. Reg. 1.15 (1981) as a "temporary layoff involving twenty (20) or more workers." A temporary layoff is defined in Employment Security Comm. Reg. 1.24 (1981) as a "period of unemployment ocurring [sic] when one or more workers, because of lack of work during a payroll week as established by the employer, are partially or totally unemployed but are retained on the payroll and are considered by the employer to be continuing employees." The significance of the group temporary layoff regulation is that the employee does not have to prove that he is available for work in the sense of permanent full-time employment elsewhere. The employee is automatically entitled to benefits for the four-week period provided in Employment Security Comm. Reg. 10.16 as long as he files his claim in accordance with the regulations, which claimants have done here.

We now review the Commission's findings. The Commission's findings of fact show that claimants were laid off. The claimants were tenured. A substantial majority of the claimants had already signed individual binders for employment with the Symphony for the 1981-82 season at the time they were "laid off." Their season was shortened by five weeks, during which they received no pay, because of the Symphony's money problems. They were given assurances by the Symphony that they would be employed for the next season and that the Symphony's financial problems would be

solved. The Commission also found that (1) claimants continued to receive full benefits during this period (the disability insurance, life insurance, major medical group insurance, instrument insurance, retirement benefits and workers' compensation insurance were continued without interruption); (2) a substantial majority of the claimants had performed in benefit concerts during this period as "Musicians of the North Carolina Symphony," with the proceeds going to the Symphony to be disbursed to the musicians; and (3) the Symphony intended to have the same musicians, insofar as possible, for the next season.

These findings, suggesting that the claimants were still on the payroll although not being paid, support the following conclusion made by the Commission: "Based on the foregoing facts, it must be concluded that the claimants herein were, in effect, laid off their jobs for the final five weeks of the 1980-81 Symphony Season due to a lack of work available resulting from insufficient funding." At that point, the Commission could have more specifically concluded, as did the superior court, that claimants were temporarily laid off *in accordance with the Commission's regulations.* Instead, the Commission unnecessarily discussed claimants' availability for work with other employers on a permanent fulltime basis. The Commission then, in its only other conclusions of law, stated:

> Based on the foregoing facts and legal authorities it is concluded that the claimants herein have not met their burden of showing by the greater weight of the evidence that they have been available for permanent fulltime employment while filing claims for unemployment benefits

> . . . .

> Secondly, it is concluded that the claimants are not genuinely attached to the labor force and are, therefore, not available for permanent fulltime suitable employment because there is a virtually nonexistent market in the area of their residence and an extremely limited market nationwide for the claimants' job skills and experience.

These latter conclusions, although arguably supported by the evidence and specific findings of fact, are not necessary since, under the group temporary layoff regulations, an employee does

not initially have to prove that he is available for permanent full-time employment. The Commission's latter two conclusions of law, therefore, were not supported by *relevant* findings of fact. Since the superior court had the authority to decide the question of law, it had the authority to decide if the facts found supported the "resulting decision." I agree with the superior court that the relevant facts found support only one conclusion—that claimants were "group temporary layoff" employees.

Unlike the majority, I am not convinced that claimants have "changed their theory" to the prejudice of any party. Indeed, as stated by claimants in their brief:

> It is, by contrast, the Symphony and the Commission which have altered their theories. The Symphony's brief itself reveals the effort to argue both sides of the issue: on the one hand the Symphony admits that its goal at the Commission hearing was to show that the Appellees 'had an implied right to continued employment (with the Symphony) and, thus, were not genuinely attached to the labor force' [Brief of Appellant Symphony]; on the other hand, the Symphony argues that it 'was unsure about its future in June of 1981. Despite the hopes and best intentions of the management of the appellant Symphony, no one could say with absolute certainty in June of 1981 that the 1981-82 Symphony Season would be a reality or, that if the season did take place, whether the length of the season (and the size of the orchestra) would be subject to drastic reduction. Under such circumstances, it would have been absurd for the appellant Symphony to invoke the "group temporary lay-off" classification.' [Brief of Appellant Symphony.]

The Symphony should be estopped from denying that claimants were "group temporary lay-off" employees. In the notice of hearing given to the parties, the Commission (not the claimants) limited the evidence at the hearing to two questions: (1) claimants' separation from employment, and (2) whether claimants are able to, available for, and actively seeking work without undue restriction. Claimants thus tailored their evidence to meet these limitations by attempting to show that they were available for and seeking permanent full-time employment elsewhere. Of course, the Commission may have limited the evidence at the

---

---

hearing because the Symphony never notified the Commission, pursuant to Employment Security Comm. Reg. 9-10 (1981), that a group temporary lay-off was planned. Had the Symphony done so, this litigation may not have ensued, since claimants' entitlement to unemployment benefits would have been established. Although the Symphony did not give the notice required by Employment Security Comm. Reg. 9-10, the evidence it presented at the hearing triggered the Commission's group temporary lay-off regulations. At the hearing, the Symphony sought to show that claimants were not truly available for work elsewhere and that they were still employed by the Symphony. The Symphony is thus estopped from denying that claimants fit into the group temporary lay-off category.

I vote to affirm the superior court's order.